UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 6:21-CR-00090-01** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **XZAVIER T DYSON (01)** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

## REPORT AND RECOMMENDATION

Before the Court is a motion to suppress filed on behalf of defendant Xzavier T. Dyson ("Defendant" or "Dyson") in this case. (Rec. Doc. 25). The motion was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636. The motion came before the Court for hearing on Friday, September 24, 2021. For the reasons explained herein, it is the recommendation of the Court that defendant's motion should be GRANTED.

## Factual Background

Defendant was one of two (2) passengers in a vehicle driven by Brandon Greene on May 26, 2020.[1] Vermillion Parish Sheriff's Officer Elliot Broussard ("Broussard") observed the vehicle traveling in Abbeville, Louisiana and suspected its window tint violated La. R.S. 32:361(C), which requires, *inter alia,* light transparency of forty percent (40%) on front windshields, front driver-side and front

---

[1] Dyson's fellow passenger is referred to herein as "Montgomery." (Transcript at Rec. Doc. 38 at 14:18).

1

passenger-side windows. After following the vehicle for a short time, Broussard activated his patrol unit lights and followed Greene into the driveway of a residence, initiating a traffic stop. (Rec. Doc. 25-2 Body Camera Video at 14:20:38).

Broussard exited his patrol unit and approached the suspect vehicle; the driver having already opened the driver's side door. As he approaches the suspect vehicle, Broussard instructs the occupants to remain in the vehicle. (*Id.* at 14:20:56). Quickly after viewing the occupants, Broussard affirms that he knows the driver, referring to him by his first name: "Brandon." (*Id.* at 14:22:20:59). Broussard informs Greene that has pulled them over for suspected illegal tint, explaining that he could not see that it was Greene in the car, because of the high level of tint on the vehicle windows. (*Id.* at 14:21:05). Broussard instructs Greene to produce his drivers' license, vehicle registration and proof of insurance.

At approximately four (4) minutes into the traffic stop, Broussard opened the passenger side door and ordered Dyson and his fellow passenger out of the vehicle. (*Id.* at 14:24:43). At this point, three (3) additional officers are now visible on the scene, having arrived in response to Broussard's call for backup, initiated at the beginning of the traffic stop. After all persons exited the vehicle, Broussard informed them that he was "going to advise [them] of their *Miranda* rights" although they were not under arrest. (*Id.* at 14:25:35). The driver and passengers were Mirandized while standing beside the vehicle in the presence of the several officers

on the scene. Following advisement of their rights, Broussard informed the driver and passengers that he smelled marijuana emanating from the vehicle. In response, Greene explained that he had just purchased the vehicle that day and gave voluntary consent for it to be searched. As the vehicle actually belonged to his girlfriend, he called her and explained the situation, after which she gave her consent for the search of the vehicle. (*Id.* at 14:25:50). As Broussard prepared the forms for Greene's completion, casual conversation ensued between the officers and suspects as Greene lamented his suspicion that his girlfriend's new car was sold to her with a faulty transmission. (*Id.* at 14:31:15-25).

Twelve minutes after the initiation of this traffic stop, Broussard presented Greene with a ticket for illegal tint, again explaining to him the legal tint limit and where the vehicle at issue falls on his tint meter scale. (*Id.* at 14:32:20). Broussard also presentede Greene with a "Consent to Search" form, which Broussard explaind gave him consent to search the vehicle and Greene's person based on Broussard's detection of the smell of marijuana emanating from the vehicle. (*Id.* at 14:34:00). Greene signed the consent form and Broussard and a fellow officer commenced a search of Greene's vehicle as the occupants stand aside near other backup officers.

At 2:37:37 p.m., Broussard exited the vehicle, made a quick check under the hood and, finding nothing, closed the hood. Immediately thereafter, at 2:38:03 p.m., Broussard announced that he will "clear y'all real quick one a time" before

concluding the stop. Broussard's ensuing pat down search of Dyson revealed a firearm, concealed within his underwear, resulting in Dyson's arrest and subsequent indictment as a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

## Analysis

Defendant's Motion to Suppress invokes the exclusionary rule, as it seeks to preclude the government from introducing at trial certain evidence, specifically the items uncovered in the warrantless pat-down search of his person. "The exclusionary rule was created by the Supreme Court to 'supplement the bare text' of the Fourth Amendment, which 'protects the right to be free from 'unreasonable searches and seizures,' but ... is silent about how this right is to be enforced.'" *United States v. Ganzer*, 922 F.3d 579, 584 (5th Cir.), *cert. denied,* 140 S. Ct. 276 (2019), citing *Davis v. United States*, 564 U.S. 229, 231 (2011). The exclusionary rule operates to exclude the prosecution from introducing evidence obtained unconstitutionally. *Id*. Its purpose is to deter officer misconduct, not to redress injury to the victim of a constitutional violation or to address judicial errors or misconduct. *Id*., citing *Davis v. United States*, 564 U.S. 229, 236-37 (2011), and *United States v. Leon*, 468 U.S. 897, 916 (1984).

Generally, "the defendant has the burden of proving, by a preponderance of the evidence, that the material in question was seized in violation of his

constitutional rights." *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993). In cases such as this, where the officer acted without a warrant, the government bears the burden of proof. *Id; United States v. Castro*, 166 F.3d 728, 733, fn. 6 (5th Cir. 1999).

Where the search at issue is made during a traffic stop, as here, the Fifth Circuit instructs:

> The reasonableness of traffic stops and investigative detentions of persons suspected of criminal activity is evaluated through a two-step inquiry under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Stevens,* 487 F.3d 232, 244 (5th Cir.2007). First, we determine whether stopping the vehicle was initially justified by reasonable suspicion. Second, we evaluate whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. In the context of a traffic stop, once an officer's initial suspicions "have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Estrada,* 459 F.3d 627, 631 (5th Cir.2006).

*United States v. Powell*, 732 F.3d 361, 369 (5th Cir. 2013).

## I. The initial stop was reasonable

The government asserts Broussard's observation of the vehicle in question led him to suspect a violation of La. R.S. 32.361.1. Body camera footage produced in opposition to the motion shows Broussard announced the suspected violation to Greene at the beginning of the stop and, upon performing a light transparency test with his tint-meter, allowed Greene to view the results of the tint-meter test while explaining the resulting violation. Broussard then wrote Greene a citation for improper tint. Under these facts, the Court finds, and the defendant concedes, that

5

the initial stop was reasonable under the Fourth Amendment. Broussard suspected Greene of an articulable violation of Louisiana law and, upon instigating the stop, confirmed the violation and issued a citation for same. Broussard carried a tint-meter with him and had both the means and the intention to investigate his articulated suspected violation in this case. Accordingly, the government satisfies the first prong of inquiry.

### II. Broussard lacked reasonable suspicion to support a pat down search of Dyson

An officer making a traffic stop may lawfully instruct the driver and passengers of a vehicle to exit the vehicle during the pendency of the stop. *Maryland v. Wilson*, 519 U.S. 408 (1997); *Pennsylvania v. Mimms*, 434 U.S. 106 (1977). The smell of marijuana may provide an experienced law enforcement officer with reasonable suspicion to prolong a custodial stop, once initiated. *U.S. v. Newton*, 463 Fed. App'x. 462, 466 (5th Cir. 2012); *U.S. v. McKeever*, 906 F.2d 129, 132 (5th Cir. 1990).

A pat down search of vehicle occupants may not be conducted unless an officer possesses an articulable basis for belief that an occupant is armed or dangerous. Under *Terry*, limited pat down searches incident to vehicle searches are permissible only to the extent necessary to ensure an officer's safety during the conduct of the vehicle search. *U.S. v. Jenson*, 462 F.3d 399, 407-08 (5th Cir. 2006) (citing *Terry v. Ohio*, 392 U.S. at 27). As set forth below, at no time did Broussard

have any concern for his safety during the stop once his backup arrived, and therefore, the Court rejects the government's proffered rationale that the pat down was justified by the officer's continued detection of the odor of marijuana after clearing the vehicle, since a search for marijuana on a person impermissibly expands the scope of the Terry pat-down search. *Id.*; *Carpenter v. U.S.*, 138 S.Ct. 2206, 2221 (2018) quoting *Riley v. California*, 573 U.S. 373, 382 (2014) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.").

Recalling the timeline of events as detailed above, this Court finds that the appropriate time for a Terry pat down search would have been, at its latest, when the driver and passengers were ordered from the vehicle. According to the video, this instance occurred at approximately 2:25:08 p.m. (Rec. Doc. 25-2). The Court's conclusion is supported by the overwhelming evidence regarding Broussard's lack of fear or apprehension as to the vehicle occupants.

At the hearing, Broussard testified that he was familiar with Dyson because of a prior traffic stop on April 1, 2019 which resulted in Dyson's arrest for possession of synthetic marijuana. Broussard recalled that Dyson was found to be in possession of a Smith and Wesson nine millimeter handgun during that stop. Broussard testified that he was aware at the time of the stop that Dyson had bonded out of detention based on COVID-19 protocols, but the charges against him from the April 1, 2019

stop remained pending on the date of this new encounter. (Transcript at Rec. Doc. 38 at 8:9 – 9:4). At the moment when the driver and passengers were ordered from the vehicle, Broussard could have lawfully conducted a Terry pat-down to ensure his safety as he conducted the remainder of the stop. Broussard's testimony affirms that he did not feel that a *Terry* pat-down was necessary because, he observed:

> [t]here was more officers than people. I trust my coworkers. I wasn't concerned for safety purposes at that point." (Transcript at 13:4 - 7).

Having established that no *Terry* pat-down was conducted, any searches after this point must be analyzed as independent, warrantless searches, which are unreasonable *per se* under the Fourth Amendment, absent some recognized exception. *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011).

As with all Fourth Amendment analyses, "reasonableness is the touchstone." *Mimms*, 434 U.S. at 108. Here, Greene's voluntary oral and written consent permitted a reasonable search of Greene's vehicle and person. Upon completion of the vehicle search, during which no contraband was located, Broussard could have lawfully performed a pat-down search of Greene based on his written consent but lacked a reasonable basis to perform a warrantless pat-down search of either Montgomery or Dyson. Thus, the government must show the applicability of some exception to the warrant requirement in order to prevent suppression of the evidence at issue.

The Court notes at this point that the government's theory opposing suppression has evolved since the filing of this motion. The government's brief asserts that probable cause existed to frisk Dyson when, upon completion of the vehicle search, the source of the marijuana odor had not been identified. (Rec. Doc. 29 at pp. 8-10). Broussard's testimony before this Court was that he believed the lack of objection from Dyson to his announcement that he needed to "clear" each occupant before the stop could conclude amounted to consent to be searched. (Transcript 13:15-18; 19:16-22). Thus, Broussard's testimony contradicts the government's stated basis for the warrantless pat-down of Dyson, evidencing a belief that he was searching pursuant to consent.

*Consent*

Voluntary consent constitutes an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); U.S. v. Zavala, 541 F.3d 562, 576 (5th Cir. 1993) citing *United States v. Richard*, 994 F.2d 244, 250 (5th Cir. 1993). Where, as here, a search is purportedly based on consent, the search is strictly limited to the scope of the demonstrable consent. *U.S. v. Mendoza-Gonzales*, 318 F.3d 663, 666 (5th Cir. 2003). The government bears the burden of showing that Dyson gave affirmative or implied consent to Broussard's pat-down search. *United States v. Santiago*, 410 F.3d 193, 198-99 (5th Cir. 2005). The government must show that it obtained: (1) consent; (2) that is voluntarily given;

(3) by an individual with actual or apparent authority; and (4) that the resulting search did not exceed the scope of the consent. *United States v. Staggers*, 961 F.3d 745, 757 (5th Cir. 2020). Consent need not be explicit and may be implied from silence or failure to object when it follows a police officer's explicit or implicit request for consent. *Id.* at 757; *United States v. Martinez*, 410 F.Appx. 759, 763 (5th Cir. 2011) (internal citations omitted). Mere nonresistance, however, does not constitute implied consent. *U.S. v. Cooper*, 43 F.3d 140 (5th Cir. 1995).

Courts within the Fifth Circuit consider six (6) factors when asked to evaluate whether express or implied consent was given voluntarily:

> (1) the defendant's custodial status;
> (2) the presence of coercive police procedures;
> (3) the extent and level of the defendant's cooperation with the police;
> (4) the defendant's awareness of his right to refuse consent;
> (5) the defendant's education and intelligence;
> (6) the defendant's belief that no incriminating evidence will be found.

All factors are relevant, and no single factor is dispositive. *United States v. Ruigomez*, 702 F.2d 61, 65 (5th Cir. 1983).

The Court notes that because the government's theory has evolved into one of "plain smell" probable cause which will be addressed below, it failed to address the intricate details of voluntary consent in this case. Given the ample video evidence available, however, the Court is prepared to address the issue.

It is uncontroverted that there was no written or oral express consent as to the Defendant. At no time, was Dyson presented with a "Consent to Search" form, though Broussard could have done so at the same time he presented Greene with this form. Similarly, at no time was Dyson expressly asked for his consent to be searched. Rather, as detailed above, Broussard announced at the conclusion of the vehicle search that all three (3) vehicle occupants would need to be searched in order for the traffic stop to conclude. (Rec. Doc. 25-2 at 14:38:03). What remains, then is a determination of whether Dyson's acquiescence to Broussard's pat-down search amounted to implied consent under the circumstances extant at that moment.

Having considered the six (6) factors bearing on voluntariness under *Ruigomez*, this Court finds that any implied consent attributed to Dyson by Broussard was not voluntary under the circumstances that existed at that time. Broussard's *Miranda* warnings to the three (3) vehicle occupants, coupled with his advice that all three (3) occupants would need to submit to a search of their person in order to conclude the stop created ample grounds for a reasonable belief by Dyson that he was not free to leave prior to submitting to a search of his person. The Court also notes the lengthy duration of the stop, twenty (20) minutes prior to the commencement of the pat-down searches, as a factor conveying custodial status to the Defendant. As noted above, neither Dyson nor his co-passenger were asked for their consent to be searched and, similarly, were not advised of their rights to refuse

consent. All vehicle occupants were highly cooperative with Broussard and his fellow officers at the scene. The Court is not aware of Dyson's educational background and no evidence was introduced to support a finding of diminished capacity in this matter. Accordingly, the Court will assume for these purposes that the Defendant is of average intelligence and able to comprehend accordingly. Although the Court believes that Broussard's statement to Dyson and his cohorts premising the end of the traffic stop on their pat-down searches to be misleading, there is no evidence before the Court to suggest that this statement, made in an offhanded manner, constitutes a coercive police procedure or is made willfully in an attempt to betray Dyson's Fourth Amendment rights. Finally, we note that Dyson has prior experience with law enforcement and some understanding that probable cause is required for a vehicle search. The Court does not, however, attribute to this defendant the full scope of legal knowledge necessary to understand the procedural line that was crossed by Broussard in failing to make a *Terry* pat-down prior to the inspection of the vehicle. The Court notes, here, that it appears Broussard himself may not have realized that his pat-down searches of Montgomery and Dyson were not supported under *Terry*. At the hearing, Broussard testified that his searches made post-vehicle search were "[o]pen hand Terry pat down." (Transcript at 14:1-3).

Considering the circumstances extant at the moment when Dyson was presented with Broussard's instruction, the Court finds that a person of typical

understanding and intelligence may have reasonably believed they were not free to decline the pat-down search and that, for that reason, Dyson's acquiescence to the search did not amount to voluntary consent in this case.

*Probable Cause*

It is well settled that the smell of marijuana emanating from a vehicle may give an experienced officer probable cause to search the vehicle. *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989). The government fails to cite, nor is the Court aware of, jurisprudence supporting the expansion of this maxim to searches of the person, short of the search incident to arrest exception, which necessarily requires probable cause to support the underlying arrest.

A search incident to arrest may include a search of the person to locate weapons but may also include a more detailed search of the person for evidence of a crime. *Terry*, 392 U.S. at 26, citing *Preston v. U.S.*, 376 U.S. 364 (1964). The evidence before this Court does not show that Broussard conducted the pat-down searches of either Dyson or his co-passenger, Montgomery, as searches incident to arrest. Rather, Broussard expressly instructed all three (3) vehicle occupants that, despite being given Miranda warnings, none of them was under arrest. The events occurring between that instruction and Broussard's initiation of Dyson's pat-down search did not give rise to probable cause for an arrest, which is evident in Broussard's candid admission that he was searching for marijuana though he found

13

none in the vehicle. (Transcript 25:10-25). Given these facts, the government fails to show that Broussard formed an articulable basis for the reasonable belief that Dyson committed a crime, giving rise to probable cause to support a pat-down search of his person.

*Exigency*

The exigent circumstances doctrine permits a warrantless search when the circumstances allow no time to secure a warrant. *Linicomn v. Hill*, 902 F.3d 529, 536 (5th Cir. 2018). Relative to the facts of this case, such exigencies include the prevention of destruction of evidence or the prevention of suspect escape. *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The government argues in favor of a finding of exigency in this case, based on Broussard's belief that the vehicle occupants were hiding contraband and would escape with this contraband without pat-down searches. The Court does not find that the facts of this case support a finding of exigency. Rather, the video evidence demonstrates Broussard was provided ample support by at least three (3) backup officers and could have (1) sought the consent of Dyson in writing; (2) sought Dyson's express oral consent to search; or (3) sought a warrant to search Dyson based on plain smell and Broussard's knowledge of this Defendant's criminal history. At this point the Court also reiterates the custodial nature of the stop and the several bystander officers available to Broussard for assistance.

An exhaustive review of the facts, as displayed by the video evidence, demonstrates no emergent situation. Rather, as cited above, the vehicle occupants engaged in convivial small-talk with supporting officers and were otherwise completely cooperative. No basis exists, therefore, to conclude Broussard was practically prevented obtaining consent or a warrant prior to search of the Defendant's person. Under the facts of this case this Court finds that Broussard's failure to pursue consent or a warrant prior to search was unreasonable and, thus, not subject to the exigency exception.

## *Conslusion*

Having carefully reviewed the evidence and argument presented by the Defendant and the government, the Court finds that Broussard's pat-down search of Dyson was not authorized under *Terry v. Ohio*, nor was it subject to the exceptions of consent or exigency, as those are interpreted by applicable jurisprudence. Accordingly, the Fourth Amendment presumption of unreasonableness should be applied in this case and, therefore, the exclusionary rule also applied to the evidence seized during the pat-down search of Defendant.

Broussard's own narrative statement affirms that the reason for the pat down search was "experience with persons concealing contraband or weapons on their person" after finding no such items in the vehicle. (Rec. Doc. 25-2). In the Court's view, the evidence shows no purpose in these searches other than the continued

search for contraband, which is unreasonable under the Fourth Amendment, absent enumerated exceptions. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 209 (5th Cir. 2009) ("An accompanying frisk for weapons [during a *Terry* stop] is 'a limited protective search for concealed weapons,' not a search to discover evidence of a crime." Citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)). The government fails to show application of any relevant exception in these proceedings.

Based on the foregoing analysis, this Court recommends that Defendant's motion to suppress be GRANTED and, accordingly, all evidence seized from his person by Broussard on May 26, 2020 during the stop in question be suppressed and deemed inadmissible against him in the charging or prosecution of any crime.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

  THUS DONE in Chambers, Lafayette, Louisiana on this 19th day of October, 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE