UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:21-CR-00090-01 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| XZAVIER T DYSON (01) | MAGISTRATE JUDGE PATRICK J. HANNA |

MEMORANDUM RULING

The present matter before the court is defendant Xzavier Dyson's Motion to Suppress [ECF No. 25]. The Motion to Suppress was referred to Magistrate Judge Patrick Hanna and, following an evidentiary hearing, Judge Hanna issued a Report and Recommendation ("R&R") [ECF No. 39] recommending that the Motion to Suppress be granted. The United States filed a timely objection to the R&R.

I.
BACKGROUND

The relevant facts set forth in the R&R are undisputed. On May 26, 2020, Vermillion Parish Sheriff's Deputy Elliot Broussard conducted a traffic stop on a vehicle driven by Brandon Greene based on Deputy Broussard's suspicion that the vehicle's window tinting violated La. R.S. 32:361(C).[1] Dyson was one of two passengers in the vehicle at the time of the stop.[2] Deputy Broussard testified that he approached the car and instructed the driver to remain in the vehicle and to roll down the windows.[3] He further testified that when he approached the vehicle, he

---

[1] R&R at 1.
[2] *Id.*
[3] *Id.* at 2

1

recognized Greene.[4] Deputy Broussard also recognized Dyson, who was sitting in the back seat of the vehicle behind Greene.[5] Deputy Broussard recognized Dyson from a past encounter—an April 2019 arrest for possession of synthetic marijuana and the illegal possession of a concealed handgun. Broussard also testified that "all three [of the vehicle occupants] are known to possess firearms and two are known to flee from officers both on foot and in a vehicle."[6]

Deputy Broussard tested the vehicle's window tint, found that the tint violated state law, and began the process of issuing a citation for the violation.[7] However, Deputy Broussard testified that there was a "strong odor of marijuana emitting from the vehicle."[8] By this time, three additional deputies had arrived as Deputy Broussard's back up.[9] Broussard asked Greene, Dyson, and a third passenger to step out of the vehicle, he provided them with *Miranda* warnings, he advised them that he smelled marijuana, and he obtained written consent to search the vehicle.[10] The interior and engine compartment of the vehicle were searched and no drugs were found.[11] Deputy Broussard then advised Greene, Dyson and the third passenger that he would "clear y'all real quick one a time" before ending the stop.[12] Broussard conducted a "pat-down" search of Dyson. That search revealed a firearm concealed in Dyson's underwear.[13] Dyson was subsequently indicted as a "felon in possession" under 18 U.S.C. § 922(g)(1) and 924(a)(2).

Dyson moved to suppress the items discovered during the pat-down search on the grounds that the search violated his Fourth Amendment rights. The Motion to Suppress was referred to the

---

[4] Hearing Transcript [ECF No. 38] at 7.
[5] *Id.* at 7-8.
[6] *Id.*
[7] R&R at 2.
[8] ECF No. 38 at 9.
[9] R&R at 2.
[10] *Id.* at 2-3.
[11] *Id.* at 3.
[12] *Id.*
[13] *Id.* at 4.

2

Magistrate Judge, who held an evidentiary hearing that included the testimony of Deputy Broussard as well as body camera footage from the stop.[14] The Magistrate Judge then issued the R&R recommending that the Motion to Suppress be granted.[15] In recommending that the motion be granted, the Magistrate Judge concluded that:

- the initial stop of the vehicle was reasonable: Deputy Broussard suspected a window tint violation, confirmed the violation, and wrote a citation;[16]

- at the moment Dyson and the other passengers were ordered from vehicle "Broussard could have lawfully conducted a *Terry* pat-down to ensure his safety as he conducted the remainder of the stop";[17]

- Broussard did not conduct a *Terry* pat-down search at this time because (1) the arrival of the three deputies to assist Broussard provided additional protection, and (2) Broussard testified that "I wasn't concerned for safety purposes at that point";[18]

- because Broussard did not conduct a pat-down search at this time, any searches after this point (including the ultimate pat-down that revealed Dyson's weapon) had to be "analyzed as independent, warrantless searches, which are unreasonable per se under the Fourth Amendment, absent some recognized exception";[19]

- the record reflected no such exception with respect to Dyson's pat-down search;[20] and

- Dyson did not consent to the pat-down search.[21]

The United States objected to the R&R on the grounds that the search was a valid *Terry* pat-down search supported by a reasonable suspicion that Dyson was armed and posed a danger to Broussard and the other responding deputies.

---

[14] ECF No. 38.
[15] ECF No. 39.
[16] R&R at 5-6.
[17] *Id.* at 7.
[18] *Id.* at 7-8.
[19] *Id.*
[20] *Id.*
[21] *Id.* at 9-13.

3

## II.
## THE APPLICABLE STANDARD

Warrantless searches are presumptively unreasonable under the Fourth Amendment, and the government bears the burden of establishing circumstances to justify them. *United States v. Lage*, 183 F.3d 374, 380 (5th Cir.1999); *United States v. Berick*, 710 F.2d 1035, 1037 (5th Cir.1983). In *Terry v. Ohio*,[22] the United States Supreme Court held that a pat down search of an individual who an officer suspected to be engaged in criminal activity was reasonable under the Fourth Amendment. The Court recognized that a limited pat down search for weapons served the purpose of protecting both the officer and the public. The Court subsequently expanded the reasonableness of *Terry* searches to traffic stops as the Court recognized that traffic stops "resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*,"[23] and further that traffic stops were "especially fraught with danger to police officers."[24] Subsequent Supreme Court cases examined the application of *Terry* pat downs in traffic stops. In *Pennsylvania v. Mimms*,[25] the Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."[26] The Court further held in *Mimms* that, once outside a stopped vehicle, a driver may be patted down for weapons if the officer reasonably concludes that the driver "might be armed and presently dangerous."[27] In *Maryland v. Wilson*,[28] the Court held that the *Mimms* rule applies to passengers as well as to drivers.

---

[22] 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[23] *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).
[24] *Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).
[25] 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).
[26] *Mimms*, 434 U.S. at 111.
[27] *Id.* at 112.
[28] 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

## III.
### ANALYSIS

Dyson argues that the *Terry* pat-down at the end of the encounter violated the Fourth Amendment because Broussard testified that he did not fear for his safety at the time of the search. The Magistrate Judge agreed. The R&R reasons that a *Terry* pat-down search for weapons would have been proper at the beginning of the encounter when Deputy Broussard ordered Dyson and the other occupants out of the vehicle.[29] After that point, however, Broussard lacked grounds to conduct a *Terry* pat-down search because other deputies had arrived at the scene to provide backup and Broussard testified that he had no fear that Dyson was armed and dangerous.[30] The government objected to the R&R, arguing that, at the time of the *Terry* search, there was objective evidence that would lead a reasonable officer to believe that Dyson was armed and posed a danger to the deputies.

The Court agrees with the government's position. The record reflects that Deputy Broussard knew that a firearm was discovered on Dyson during a prior traffic stop just over a year prior to the present traffic stop. Deputy Broussard also knew that synthetic marijuana was found during the prior traffic stop and that firearm and drug charges were still pending against Dyson at the time of the present stop. Deputy Broussard further testified that he smelled the odor of marijuana emanating from the vehicle during the present traffic stop. While Broussard and the other officers could not locate the source of the marijuana odor during a search of the vehicle, the

---

[29] R&R at 8 ("At the moment when the driver and passengers were ordered from the vehicle, Broussard could have lawfully conducted a *Terry* pat-down to ensure his safety as he conducted the remainder of the stop. Broussard's testimony affirms that he did not feel that a *Terry* pat-down was necessary because, he observed: '[t]here was more officers than people. I trust my coworkers. I wasn't concerned for safety purposes at that point.'").

[30] *Id.* ("Having established that no *Terry* pat-down was conducted, any searches after this point must be analyzed as independent, warrantless searches, which are unreasonable per se under the Fourth Amendment, absent some recognized exception." (citing *United States v. Aguirre,* 664 F.3d 606, 610 (5th Cir. 2011)).

smell was present at the time of Dyson's pat-down search. Based on these facts, an officer could reasonably suspect that Dyson was armed and posed a danger to the responding officers.

On the other hand, Dyson's argument that the pat-down search was illegal is inconsistent with Supreme Court and Fifth Circuit precedent in at least three respects. First, Dyson and the R&R rely heavily on Deputy Broussard's testimony that he did not fear for his safety when he searched Dyson. But Dyson's *subjective* assessment of the danger posed by Dyson does not eliminate the basis for a valid *Terry* pat-down search because, as explained by the Supreme Court, an *objective* standard must be used in evaluating alleged violations of the Fourth Amendment.[31] In *Terry*, the Court adopted an objective analysis in determining reasonableness of an investigatory stop:

> And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?[32]

This objective standard applies even when the record reflects that the officer conducting the search did not subjectively fear that the defendant was armed and dangerous:

> Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed.[33]

---

[31] *Scott v. U.S.*, 436 U.S. 128 (1978).
[32] *Terry*, 391 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).
[33] *U.S. v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

In *United States v. Wallen*,[34] the Fifth Circuit ruled that the district court erred in applying a subjective standard in determining the legality of a *Terry* pat-down search for weapons:

> The district court's finding that [the officer] did not in fact fear for his safety is incorrect, because the validity of the protective search is based on objective evidence. The subjective motivations of police are irrelevant to determining whether a search or seizure is reasonable under the Fourth Amendment. Specifically with regard to the matter of a protective sweep under *Long*, this court has emphasized that there is no legal requirement that an officer subjectively fear for his own safety before engaging in such a search.[35]

Here, the facts known to Broussard at the time of the search—Dyson's prior arrest for the illegal possession of a firearm and drugs, and the smell of marijuana emanating from the vehicle during the present stop—support a *Terry* pat-down search under Supreme Court and Fifth Circuit precedent. Broussard's testimony about his subjective assessment of the danger posed by Dyson does not eliminate the basis for a valid search.

Second, Dyson argues that the arrival of three additional deputies as back up undermines the grounds for a protective search. The Court disagrees. The objective facts supported a reasonable suspicion that Dyson was armed and posed a danger to the responding officers. That danger existed regardless of whether Deputy Broussard conducted the traffic stop on his own or conducted the stop with three officers as backup. If Dyson was armed, he could have just as easily injured one of the three deputies who arrived to assist Broussard in the stop. The presence of the three officers did not eliminate the risk posed if Dyson was armed and chose to use his weapon against the responding officers.

Third, Dyson's argument appears to limit the availability of a *Terry* pat-down search to the beginning of the encounter with the detainee. In the R&R, the Magistrate Judge expressly found that there were grounds for a *Terry* pat-down search when Deputy Broussard first ordered Dyson

---

[34] 388 F.3d 161, 166–67 (5th Cir. 2004).
[35] *Id.*

7

and the other passengers out of the vehicle.[36] However, according to Dyson and the R&R, the grounds for a pat-down search ended when Broussard failed to conduct a pat-down search at that time.[37] Dyson cites no jurisprudence that limits a *Terry* pat down for weapons to the beginning of an encounter with a detainee. To the contrary, the Supreme Court has stated that:

> A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. ***The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene and inform the driver and passengers they are free to leave.***[38]

Similarly, in explaining the timing of a *Terry* protective pat-down search, the Fifth Circuit stated that: "the fear of a person's gaining immediate control of weapons does not limit itself to the time of the stop but ***extends through the entire interaction between him and the officer***." Here, the objective facts supporting a protective pat-down search existed throughout the entire encounter, including the moment of Dyson's search. Accordingly, the grounds for a pat-down search did not end after Dyson and the other passengers were ordered out of the vehicle.

Dyson's challenge to the timing of the pat-down search argument may be construed as an argument that the search was unreasonably prolonged. The R&R does not expressly address this argument. Even if it did, the argument does not support the motion to suppress. Once an officer's initial suspicions that led to a traffic stop "have been verified or dispelled, the detention must end *unless there is additional reasonable suspicion supported by articulable facts*."[39] Here, the stop was initiated because Broussard suspected that the tint on the vehicle's windows violated La. R.S. 32.261.1, and that suspicion was confirmed once the officer tested the window tint with a tint-

---

[36] Broussard could have conducted a *Terry* pat down "at the moment when the driver and passengers were ordered from the vehicle...." R&R at 8.
[37] *Id.*
[38] *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009) (emphasis added and citations omitted).
[39] *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir.2006) (emphasis added).

meter. Broussard, however, detected the smell of marijuana emanating from the vehicle. That fact, along with the fact that Broussard recognized Dyson from a prior arrest for illegal drugs, provided reasonable suspicion to prolong the stop. Those grounds existed at the time Broussard searched Dyson.

In sum, the Court declines to adopt the R&R. Based on the record, the Court concludes that there was an objective factual basis for Deputy Broussard to conduct a *Terry* pat-down search on Dyson. The Court, therefore, DENIES the Motion to Suppress [ECF No. 25].

THUS DONE in Chambers on this 20th day of December, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE